PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ELLA HENDERSON o/b/o TASHEANA HENDERSON, | ) ) ) | CASE NO.   1:08CV2989 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | MAGISTRATE JUDGE PEARSON |
|  | ) |  |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
|  | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

(1:08CV2989)

# TABLE OF CONTENTS

I.  Overview....................................................................................................................................3

II. Procedural History.....................................................................................................................4

III.  Law and Analysis.....................................................................................................................5

    A. Judicial Review of a Final Agency Decision..................................................................5

    B. Determination of Disability in a Minor.........................................................................6

    C. Substantial Evidence Supports the ALJ's Findings of "Less than Marked" in Each of
    the Domains at Issue......................................................................................................11

        1. The Domain of Interacting and Relating with Others......................................12

        2. The Domain of Caring For Yourself..............................................................15

        3. The Domain of Attending and Completing Tasks...........................................17

    D. Weight Assigned Medical Evidence, Generally...........................................................21

        1. The ALJ Properly Articulated the Weight Given Dr. El Soud........................24

            a  The ALJ Did Not Reject Dr. El Soud's Opinions................................24

            b.  The ALJ Assigned Dr. El Soud's Opinions the Proper

            Weight.......................................................................................................25

        2.  Dr. Roizen as a Treating Physician................................................................27

            a. Classification.........................................................................................27

            b . Harmless Error Analysis.....................................................................30

IV. Conclusion...............................................................................................................................32

    APPENDIX A..................................................................................................................Attached

(1:08CV2989)

Plaintiff Ella Henderson on behalf of ("o/b/o") her great-granddaughter, Tasheana

Henderson, sought judicial review of the Social Security Administration's (also "the Agency")

final decision denying Tasheana's application for Supplemental Security Income.  The parties

have consented to the jurisdiction of the undersigned Magistrate Judge.

For the reasons provided below, the Court affirms the Agency's decision denying benefits

to Plaintiff Ella Henderson o/b/o of Tasheana Henderson.

## I.  <u>Overview</u>

Tasheana Henderson was born on December 22, 1999 and was eight years old at the time

of the hearing before Administrative Law Judge ("ALJ") E. James Gildea.  Tasheana has lived

with her great-grandmother, Ella Henderson, since 2003.  At all relevant times, Tasheana was a

"school-age child"  who had not engaged in any substantial gainful activity prior to the ALJ's

decision. (Tr. 17.)

The ALJ found that, although Tasheana suffers from the following severe impairments:

"anxiety disorder, attention deficit hyperactivity disorder, oppositional defiant disorder and

asthma (20 CFR 416.924(c))," Tasheana does not have an impairment or combination of

impairments that meets, medically, or functionally equals the listings.  (Tr. 17-20.)

As explained in greater detail below, if an impairment does not meet or medically equal a

listed impairment, the ALJ may find disability if the child's impairment is functionally equivalent

to a listed impairment.  To make this determination, the ALJ evaluates six areas of development

or functioning.  To establish disability, the child minimally must have "Marked" limitations in at

least two of the six domains or an "Extreme" limitation in one domain.  In this case, the ALJ

3

(1:08CV2989)

found that Tasheana had no "Marked" or "Extreme" limitation in any domain.  (Tr. 20-26.)

Tasheana argues that the ALJ's findings are incorrect and that she has a "Marked"

limitation in three of the six domains, specifically the domains of (1) Attending and Completing

Tasks, (2) Interacting and Relating with Others, and (3) Caring for Yourself.  ECF No. 16-1 at 9.

Accordingly, the crux of the matter before the Court is whether substantial evidence exists to

support the ALJ's findings that Tasheana did not show "Marked" limitation in two of the three

domains or an "Extreme" limitation in one of the three domains.

After reviewing the administrative record as a whole, including the medical records,

other evidence presented, including relevant testimony, and the legal standards applied, the Court

finds that the ALJ's decision is based upon appropriate legal standards and supported by

substantial evidence.

## II.  Procedural History

Tasheana[1] filed an application for Supplemental Security Income benefits on February 16,

2005, alleging a disability due to asthma and anxiety-related disorders.  (Tr. 14, 33.)  The Agency

initially denied Tasheana's claim on April 19, 2005, and again upon reconsideration on

November 18, 2005.  (Tr. 14.)  On December 9, 2005, Tasheana filed a request for an

administrative hearing before the ALJ which was held on June 18, 2008.  (Tr. 14.)  The ALJ held

hearing *via* video, during which he presided from Orland Park, Illinois and Tasheana, her

counsel, and her great-grandmother appeared in Cleveland, Ohio.  (Tr. 14.)  The ALJ issued a

_____

[1]  The balance of this memorandum will refer to Tasheana as the complainant unless
necessary to refer to her great-grandmother, Ella Henderson, in that role.

4

(1:08CV2989)

decision denying benefits on July 8, 2008, ultimately concluding that Tasheana "does not have an impairment or combination of impairments that results in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning," as required to find a minor claimant disabled.  (Tr. 26.)  Tasheana filed a request for a review of the ALJ's decision which the Appeals Council denied on November 18, 2008.  Because the Appeals Council denied Tasheana's request for review, the ALJ's decision dated July 8, 2008, became the final decision of the Agency.  Seeking a review of the Agency's final decision denying her benefits, Tasheana timely filed a Complaint with this Court asserting the following issue:

> WHETHER THE ALJ's DETERMINATION THAT THE PLAINTIFF's ANXIETY DISORDER, ATTENTION DEFICIT HYPERACTIVITY DISORDER, AND OPPOSITIONAL DEFIANT DISORDER DO NOT FUNCTIONALLY EQUAL THE LISTINGS IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

ECF No. 16-1 at 1.

### III.  Law and Analysis

#### A.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs*., 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994).  Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.

5

(1:08CV2989)

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court had decided the matter differently, and even if substantial evidence also supported a different conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts.  *Mullen*, 800 F.2d at 545 (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).  The court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.  *Id.*  The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**B.  Determination of Disability in a Minor**

An individual under the age of 18 will be considered disabled if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations."  42 U.S.C. § 1382(c)(3)(i); 20 C.F.R. §§ 416.906, 416.911(b).  The regulations prescribe a three-step sequential evaluation process.  *See* 20 C.F.R. § 416.924(a).  At Step One, a child will be found "not disabled" if he/she is engaging in substantial gainful activity.  *See* 20 C.F.R. § 416.924(b).  At Step Two, a child will be found "not disabled" if he/she does not have an impairment or combination of impairments that is severe, *i.e.*, impairments that cause no more

6

(1:08CV2989)

than minimal functional limitations.  *See* 20 C.F.R. § 416.924(c).  At Step Three, a child will be found "disabled" if he/she has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *See* 20 C.F.R. § 416.924(d).

If a child does not meet or medically equal a Listing, in order to determine whether a child's impairment(s) functionally equals a Listing at Step Three, the ALJ must assess the functional limitations caused by the impairment(s) by considering how a child functions in the following six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi); *see also* 20 C.F.R. § 416. 926a(a).  "The Commissioner will consider as evidence of limitations and restrictions the assessments of treating and other medical sources, information from parents and teachers, and assessments made after consultative examinations.  20 CFR § 416.926a(b)(3)."  *Matos v. Comm. Soc. Sec.*, 320 F.Supp.2d 613, 615 (N.D. Ohio 2004).  If a child's impairment(s) results in "Marked" limitations in two domains or an "extreme" limitation in one domain and meets the duration requirements, the impairment(s) functionally equal(s) the listings and the child will be found disabled.  *See* 20 C.F.R. § 416.

7

(1:08CV2989)

926a(d).

    The ALJ ruled in favor of Tasheana at Steps One and Two.  With regard to Step One, the

ALJ determined that Tasheana was "a school-age child on February 16, 2005, the date the

application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2))," who has not

engaged in substantial gainful activity.  (Tr. 17.)  At Step Two, the ALJ determined that

Tasheana had the following severe impairments: anxiety disorder, attention deficit hyperactivity

disorder, oppositional defiant disorder and asthma.  (Tr. 17.)  Neither party contests the ALJ's

findings at Steps One and Two.  The dispute arose at Step Three.

    If an impairment does not "meet" a listed impairment, disability may nonetheless be

established if the child's impairment is medically or functionally equivalent to a listed

impairment.  Tasheana does not contend that she can establish medical equivalence.  Rather, her

claim is that her disability is functionally equivalent to a listed disability.

    Tasheana specifically seeks relief from the ALJ's findings (in Step Three) that she did not

have an impairment or combination of impairments causing a "Marked" limitation in at least two

domains.  A finding of an "Extreme" limitation in at least one domain would also establish a

functional equivalent to a listed impairment, Tasheana, does not, however, claim an "Extreme"

limitation.[2]

    The Agency defines a "Marked" and "Extreme" limitation as follows:

    (2) Marked limitation.

_____

    [2]  "It is plaintiff's position that she has a  degree of limitation in two or more domains:
specifically in the domains of attending and completing tasks, interacting and relating to others
and caring for self."  ECF No. 16-1 at 9.

8

(1:08CV2989)

(i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect  to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

(3) Extreme limitation.

(i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. §§ 416.926a(e)(2)(i), (e)(3)(i).

In the instant matter, the ALJ found that Tasheana did not demonstrate a "Marked" or "Extreme" limitation in any domain.  Specifically, the ALJ found that Tasheana had a "Less than Marked" limitation in five domains and no limitation in the remaining domain.[3]  Tasheana argues that the ALJ's findings are incorrect and that she has a "Marked" limitation in the domains of (1) Interacting and Relating with Others, (2) Attending and Completing Tasks, and (3) Caring for Yourself.  ECF No. 16-1 at 9.  The Court (like the parties) limits its review to these three

---

[3]  The ALJ found Tasheana had no in the domain of Moving About and Manipulating Objects.

9

(1:08CV2989)

disputed domains.

At first glance it appears that the evidence in the record paints contrasting portraits of Tasheana.  Evidence based upon events in 2005 and 2006 portray Tasheana's behavior  in a negative light due to her anxiety disorder, ADHD, and anger management issues; more recent, as well as some of the early reports, portray Tasheana's behaviors in a more positive light.  (Tr. 17-22.)  After closer evaluation, it becomes clear that Tasheana "matured" from a somewhat troubled minor into a minor who, despite documented impairments, is not disabled.

Generally, where the record contains substantial evidence supporting the ALJ's findings but also contains substantial evidence rebutting those findings, the Court must affirm the decision of the Commissioner.  *Buxton v. Halter*, 246 F.3d 762 (6th Cir. 2001); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  When there is conflicting evidence, the ALJ should discuss the evidence in some detail and articulate how he has resolved the conflicts.  In this case, the ALJ appropriately resolved conflicting evidence.  Ultimately, the ALJ found Tasheana's functioning in each of the disputed domains "Less than Marked."

Based upon the Court's review of the record, the domains of  Interacting and Relating with Others and Care for Yourself do not even present a close case, as the evidence was heavily weighted in favor of the ALJ's determination.  The record contains evidence of "Marked" as well as lesser designations for the domain of Attending and Completing Tasks.  The ALJ's finding of "Less Than Marked" in that domain, nonetheless, is clearly within his zone of choice as it is

10

(1:08CV2989)

supported by substantial evidence.[4]  A summary of the evidence regarding the three disputed

domains is attached as Appendix A.[5]

> **C.      Substantial Evidence Supports the ALJ's Findings of "Less than Marked" in Each of the Domains at Issue**

At the threshold, it is worth noting that only one source – treating physician Mahmoud El

Soud – found that Tasheana had "Marked" limitation in all three domains at issue.  Dr. El Soud's

assessment affords those domains a dubious distinction, at best, given that Dr. El Soud found that

Tasheana had "Marked" limitation in each of the six domains.  The ALJ gave the opinion of Dr.

El Soud "very minimal weight," noting that Dr. El Soud's lack of specialty and familiarity with

the record as a whole resulted in "assessments as to marked limitation in each area of functioning

far overreaching and unsupported by evidence" and "entirely inconsistent with the record as a

whole and [] the evidence provided by other more specialized treating sources."  (Tr. 22.)  Apart

from Dr. El Soud, the majority of the evidence of limitations, supports the ALJ's findings and

contradicts Dr. El Soud's.   Not even the great-grandmother's testimony supported findings of

"Marked" in every domain.  *See, e.g.*, Tr. 26 (finding that great-grandmother's testimony about

Tasheana's nail-biting, among other considerations sufficient support for a finding of "Marked"

limitation).

---

[4]  Had the evidence irrefutably shown Tasheana to have "Marked" functioning in the domain of Attending and Completing Tasks that, alone, would not dictate a finding of disabled. The minor must have "Marked" functioning in at least two domains in order to obtain a "disabled" designation and be awarded benefits.  *See* 20 C.F.R. § 416. 926a(d).

[5]  A source who did not categorize his or her finding as "Less than Marked," "Marked," or "Extreme" limitation is reflected in Appendix A based upon the content of the finding.

11

(1:08CV2989)

### 1.  <u>The Domain of Interacting and Relating with Others</u>

Tasheana argues that the ALJ erred in finding her limitation in the domain of Interacting

and Relating with Others "Less than Marked" and that the ALJ's findings are not supported by

substantial evidence.[6]  According to Tasheana, on May 3, 2007, Tasheana's teacher, Ms. Ingold,

referred her for disciplinary action for "an incident involving sexual harassment of another

student (A.R. 149)."  ECF No. 16-1 at 10.  Ms. Ingold met with Tasheana three times and gave

her a verbal warning before making the referral.  In the referral, Ms. Ingold noted that Tasheana

had exhibited unacceptable behavior all week.  ECF No. 16-1 at 10-11.  Tasheana started weekly

individual and family counseling at Berea Children's Home and Family Services and was later

---

[6] 20 C.F. R. 416.926a(i)(3) provides the following non-exhaustive examples of limited functioning in Interacting and Relating with others:

> The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.
> (i) You do not reach out to be picked up and held by your caregiver.
> (ii) You have no close friends, or your friends are all older or younger than you.
> (iii) You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences.
> (iv) You have difficulty playing games or sports with rules.
> (v) You have difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance.
> (vi) You have difficulty speaking intelligibly or with adequate fluency.

(1:08CV2989)

referred to the Cleveland Clinic Child Development clinic to start treatment with pediatrician Dr. Nancy Roizen.  ECF No. 16-1 at 11.

In finding that Tasheana had "Less than Marked" limitation in the domain of  Interacting and Relating with Others, the ALJ relied primarily upon testimony from Tasheana, the findings of pediatrician, Dr. Hagerman,[7] and consultative psychological examiner, Dr. Koicke, and the reports of a kindergarten teacher.

Tasheana testified she had many friends at school and liked to play hangman and tic tac toe at home.  (Tr. 21.)  Dr. Hagerman found that "the claimant's impairments did not meet or equal in severity any listed impairment," and that "she had less than marked limitation in interacting and relating to others."  (Tr.19) (*citing* Tr. 382 - 386).  In September of 2005, Dr. Koicke, consultative examiner, noted that overall, Tasheana "was a very sweet little girl who was very friendly and personable.  She was very cooperative and engaging, and was a pleasure to work with."  (Tr. 17) (*citing* Tr. 287-293, 369).  In October 2005, Tasheana's kindergarten teacher "reported that the claimant had no difficulties . . . interacting and relating to others . . . . She was a very nice little girl . . . obeyed school rules . . . was courteous and considerate . . .[and] was respectful toward others." (Tr. 18) (*citing* Tr. 294-313).  The teacher reported that Tasheana got along well with her peers, was friendly and completed her school work.  ( Tr. 18.)

The ALJ acknowledged that Tasheana  had a "very brief period of poor behavior" in May

---

[7] Dr. Hagerman reviewed the record and provided a medical opinion at the behest of the ALJ.  (Tr. 19, 381.)

13

(1:08CV2989)

2007.[8] (Tr. 24.) Tasheana's bad behavior seem to culminate at the time it was discovered that her great-grandmother had been giving Tasheana five times more Prozac per dosage than prescribed.[9] (Tr. 410-411.) The ALJ distinguished the period of bad behavior from the previous positive reports from teachers and doctors and noted that Tasheana's bad behavior did not continue after her medication was readjusted. (Tr. 24.) The record supports the ALJ's finding that Tasheana's bad behavior did not continue once her medication was readjusted. Additionally, after Tasheana's medication had been readjusted, progress notes from January reported that she was no longer in outside therapies, was getting good grades, and had only one bad behavior report. (Tr. 18, 22) (*citing* Tr. 424, 427).

After reviewing the ALJ's written decision, the record, the pleadings, and the pertinent regulations, the Court finds that the ALJ's conclusion that Tasheana has "Less than Marked" functioning in the domain of Interacting and Relating with Others is supported by substantial

---

[8] The following is a sample of the behavior exhibited by Tasheana, during May 2007. On "wear your clothes backwards" day Tasheana and another student pulled the student's shirt up in front of everyone. (Tr. 149, 411.) Earlier in the week Tasheana left the playground without telling an adult because someone had given her a dollar and she wanted to go to the vending machines. (Tr. 411. ) Tasheana was subsequently suspended on Friday May 4, 2007 for inappropriate classroom behavior. In addition to her bad behavior at school, at home Tasheana had problems sleeping and was more verbally and physically aggressive towards inanimate objects, other people, and herself. (Tr. 411.)

[9] On April 30, 2007, Dr. Roizen prescribed Prozac 20mg/5ml, 1ml daily for Tasheana. (Tr. 410.) On May 7, 2007, Tasheana's great-grandmother called Dr. Roizen's office for a refill of Tasheana's Prozac medication. (Tr. 410.) The nurse noted that Tasheana should not have been out of the medication so soon. (Tr. 410.) It was discovered that Tasheana's great-grandmother had been administering 5ml instead of 1ml daily (5x the amount prescribed). (Tr. 410.) The nurse demonstrated and explained to Tasheana's great-grandmother the proper administration of the medication and refilled the prescription. (Tr. 410.)

14

(1:08CV2989)

evidence.

## 2.  **The Domain of Caring for Yourself**

Tasheana argues that the ALJ erred in finding "Less than Marked" limitation in the domain of Caring for Yourself, and that the ALJ's findings are not supported by substantial evidence because, "[a]gain, medical and school records provide substantial evidence of a marked degree of impairment in this domain."[10]  ECF No. 16-1 at 12.  Tasheana referenced (1) a teacher's report from kindergarten (Tr. 294-296) that notes Tasheana's easy anger and lack of control, (2) Tasheana's attendance in weekly counseling for finger and toe nail biting, refusing to answer questions, and physical aggression toward her siblings, and (3) notes from Berea

---

[10]  20 C.F.R. 416.926a(k)(3) provides the following non-exhaustive examples of limited functioning in Caring for Self:

> The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.
> (i) You continue to place non-nutritive or inedible objects in your mouth.
> (ii) You often use self-soothing activities showing developmental regression (e.g., thumbsucking, re-chewing food), or you have restrictive or stereotyped mannerisms (e.g., body rocking, headbanging).
> (iii) You do not dress or bathe yourself appropriately for your age because you have an impairment(s) that affects this domain.
> (iv) You engage in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take your medication), or you ignore safety rules.
> (v) You do not spontaneously pursue enjoyable activities or interests.
> (vi) You have disturbance in eating or sleeping patterns.

(1:08CV2989)

Children's Home (Tr. 246-367) which reflect the findings of treating physician Dr. El Soud.

ECF No. 16-1 at 7.

The ALJ found that Tasheana had "Less than Marked" limitation in the Caring for Yourself domain.  He relied upon the positive aspects of several of the same reports Tasheana uses to claim error.  To the credit of the ALJ: (1) The same teacher who noted Tasheana's anger found that within 10-20 minutes, Tasheana has calmed down and is following and finishing her class work (Tr. 296); and (2) the progress notes from the Cleveland Clinic also show that Tasheana no longer attends outside therapies like Berea Children's Home and Family Services (Tr. 424).  The record reflects that the findings of Drs. Hagerman, Koicke and Roisen also support the ALJ's finding.  *See* Appendix A, attached.

A teacher reported an obvious,though not serious problem with handling frustration, excessive finger and toe-nail biting and at times she becomes withdrawn.  (Tr. 26.)  Dr. Hagerman found that Tasheana had "Less than Marked" limitation in Caring for Yourself.  (Tr. 19, 384.) Tasheana's great-grandmother testified that Tasheana (1) has no trouble bathing herself or brushing her teeth, (2) likes to color and write (and will do so by herself for at least 15 - 20 minutes before moving on to something else), play with false finger nails, and watch movies, (3) enjoys activities at church such as when food is a available and putting on plays, (4) enjoys field trips to the zoo and park, and (6) bites her finger and toe nails.  (Tr. 20-21.)

It is well documented in the record that Tasheana had a history of excessively biting her finger and toe nails due, at least in part, to her anxiety disorder.  In each of the first three examinations at the Cleveland Clinic, Dr. Roizen noted that one of the reasons Tasheana was

(1:08CV2989)

under her care was because of she was "biting her nails to the quick." (Tr. 415. 418, 420.)  In

January 2007, after Dr. Roizen prescribed Prozac, Tasheana's nail biting decreased.  (Tr. 413.)

In May 2007, Tasheana's behavior became very disruptive at school and any progress made with

her anxiety was reversed, as her great-grandmother told Dr. Roizen that Tasheana was picking

and scratching her skin and making small cuts.  (Tr. 411.)  It was later discovered that the great-

grandmother had been accidentally administering 5x the amount of Prozac Tasheana had been

prescribed.  (Tr. 410.)

In the more recent progress notes from January and April 2008, there is no mention of

nail biting, only that Tasheana is doing well in school overall, and doing well on her current

prescriptions.  By April 2008 Tasheana was no longer attending therapy at Berea Children's

Home and Family Services.  (Tr. 424.)

A review of the record shows the ALJ's  decision regarding Tasheana's functioning in

this domain is supported by substantial evidence.

### 3.  The Domain of Attending and Completing Tasks

Tasheana argues that the ALJ erred in finding "Less than Marked" limitation in the

domain of Attending and Completing Tasks, and that the ALJ's findings are not supported by

substantial evidence because "this finding ignores persuasive medical and school records of a

marked impairment."[11] ECF No. 16-1 at 10.  Tasheana, specifically referenced the findings of

---

[11]   20 C.F.R. 416.926a(h)(3) provides the following non-exhaustive examples of
limited functioning in attending and completing tasks:
> The following examples describe some limitations we may consider in this domain.
> Your limitations may be different from the ones listed here. Also, the examples do
> not necessarily describe a "marked" or "extreme" limitation. Whether an example

17

(1:08CV2989)

Social Security consultants, Drs. Koricke (Tr. 293), Finnerty (Tr. 327-328) and Hagerman (Tr. 382 -386), and treating physician, Dr. El Soud (Tr. 436-438), all of whom found a "Marked" impairment in concentration and persistence, or Attending and Completing Tasks. ECF No. 16-1 at 10.

The ALJ found that Tasheana had "Less than Marked" Limitation in the Attending and Completing Tasks domain. In making this finding, the ALJ acknowledged conflicting evidence and discounted it. He specified his reliance upon testimony from Tasheana's great-grandmother, notes from Berea Children's Home and Family Services, records and teacher's notes from Tasheana's school, and notes from doctors at the Cleveland Clinic. The ALJ also adequately explained why he did not rely upon Dr. Hagerman's opinion for this domain. (Tr. 23.)

Tasheana's great-grandmother testified that Tasheana (1) needs reminders to complete her chores, (2) is obedient even if not "in the mood", (3) likes to write and color (and will do so by

---

applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.

(ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.

(iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.

(iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.

(v) You require extra supervision to keep you engaged in an activity.

(1:08CV2989)

herself for at least 15 - 20 minutes before moving on to something else), play with false finger nails, and watch movies, (4) enjoys activities at church, (5) enjoys field trips to the zoo and park, (6) when frustrated does not throw tantrums but instead exhales loudly, and (7) is sensitive and easy to upset but her teachers thought well of her. (Tr. 20-21.) Tasheana's great-grandmother also testified that she thinks Tasheana functions well, is doing as well as can be expected, and is doing better than when she first came to live with her great-grandmother. (Tr. 21.)

The Berea Children's Home and Family Services "found no symptoms of attention deficit hyperactivity disorder." (Tr. 23.) Teachers noted (1) that Tasheana completed her work and that she was doing well in school through the present, (2) that Tasheana is in regular classes even though special education is available, and (3) that Tasheana remains on task for reading, math, social studies, language arts and spelling. (Tr. 23.) Evaluators at Berea Children's Home and Family Services and doctors at the Cleveland Clinic found that Tasheana does not have "Marked" limitation in this domain. (Tr. 23.)

Dr. Hagerman indicated that Tasheana had "Marked" impairment in this domain, his assessment was based on the mistaken belief that Tasheana was taking two psychotropic medications and a lack of medical or school reports detailing Tasheana's progress with medication. (Tr. 23, 383.) The ALJ does not rely on Dr. Hagerman's assessment in this domain because Tasheana was no longer taking one of the psychotropic drugs and the ALJ's review of the medical and school reports contradicts a finding of "Marked Limitation" in this domain. (Tr. 23.)

Tasheana's great-grandmother described Tasheana as sensitive and easily upset, and

19

(1:08CV2989)

commented on her behavior when frustrated. (Tr. 20-21.) It appears that Tasheana fits into example (iv) ("You are easily frustrated and give up on tasks, including ones you are capable of completing"), except that even though Tasheana became angry or frustrated easily, she did not give up on her assigned tasks, and after calming down finished the tasks. See 20 C.F.R. 416.926a(h)(3); (Tr. 296.) (Tasheana's kindergarten teacher noted that when Tasheana becomes angry she needs 10-20 minutes to "come down" and to follow and finish her class work. (Tr. 296.)) There are no current notes or questionnaires from teachers in the record to aid the Court in understanding how Tasheana presently deals with anger and frustration. There are progress notes from the Cleveland Clinic, however, which noted in January and April of 2008 that Tasheana was doing well in school, and did not mention problems with getting off task, or trouble with Attending and Completing Tasks. (Tr. 424-427.) The Court thus finds that Tasheana's reported problems with frustration do not necessarily signal a "Marked" limitation in Attending and Completing tasks.

Because Tasheana's great-grandmother has to remind her to do her chores, Tasheana may fit into example (v) ("You require extra supervision to keep you engaged in an activity"), except that Tasheana's grandmother also testified that Tasheana has no trouble coloring or watching movies without supervision. The issue appears to be getting Tasheana to stay engaged in activities she does not enjoy, like chores. This could be a problem at any age, and does not necessarily signal a "Marked" limitation in Attending and Completing tasks.

The domain of Attending and Completing Tasks is one wherein a number of source opinions indicate "Marked" limitation. The majority of this opinion evidence is based upon

(1:08CV2989)

older, kindergarten records rather than more current information that supports the ALJ's

decision.  Despite the evidence supporting a "Marked" limitation in this domain the ALJ's

written decision, the record, the pleadings, and the pertinent regulations support the ALJ's

conclusions that Tasheana's functioning in this domain is not "Marked" or "Extreme."  Because

the ALJ's decision is supported by substantial evidence, that decision must be affirmed.  Stated

differently, even if Tasheana's conclusions are also supported by substantial evidence, there is no

a basis for overturning the ALJ's decision.

### D.  Weight Assigned Medical Evidence, Generally

The Agency promises claimants that ALJs "will evaluate every medical opinion [they]

receive."  20 C.F.R. § 404.1527(d).  Yet, it also recognizes that not all medical sources need be

treated equally, classifying acceptable medical sources into three types: nonexamining sources,

nontreating (but examining) sources, and treating sources.  *See Smith v. Comm'r of Soc. Sec.*, 482

*F.3d 873, 875 (6th Cir. 2007)*.  A "nonexamining source" is "a physician, psychologist, or other

acceptable medical source who has not examined [the claimant] but provides a medical or other

opinion in [the claimant's] case."  *Id.*; 20 C.F.R. § 404.1502.  A "nontreating source" (but

examining source) has examined the claimant "but does not have, or did not have, an ongoing

treatment relationship with" her.  *Smith*, 482 F.3d at 875.  A treating source, accorded the most

deference by the Agency, has not only examined the claimant but also has an "ongoing treatment

relationship" with her consistent with accepted medical practice.  *Id.*  A physician qualifies as a

treating source if the claimant sees her "with a frequency consistent with accepted medical

practice for the type of treatment and/or evaluation required for [the] medical condition."  20

21

(1:08CV2989)

C.F.R. § 404.1502.  A physician seen infrequently can be a treating source "if the nature and

frequency of the treatment or evaluation is typical for [the] condition."  *Id.*

When evaluating medical opinions, the Agency will generally "give more weight to the

opinion of a source who has examined [the claimant] than to the opinion of a source who has not

examined" her.  *Smith*, 482 F.3d at 875; 20 C.F.R. § 404.1527(d)(1).  The Agency will give the

most weight "to opinions from [the claimant's] treating sources, since these sources are likely to

be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's]

medical impairment(s) . . . ."  *Smith*, 428 F.3d at 875; 20 C.F.R. § 404.1527(d)(2).  Evidence

from non-examining sources is also considered opinion evidence.  20 C.F.R. § 404.1527(f).[12]

Treating physicians or psychologists opinions are entitled to controlling weight under the

treating physician rule as long as they are (1) well supported by medically acceptable data and (2)

not inconsistent with other substantial evidence of record.  *Bogle v. Sullivan*, 998 F.2d 342, 347-

48 (6th Cir. 1993); 20 C.F.R. § 404.1527(d)(1); SSR 96-2p.  When the treating physician rule

does not apply, the ALJ must continue to weigh the treating source's opinion under the following

factors: "the length of the treatment relationship and frequency of examination, the nature and

extent of the treatment relationship, supportability of the opinion, consistency of the opinion with

the record as a whole, and specialization of the treating source" in determining what weight to

---

[12] The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us."  20 C.F.R. § 404.1527(f)(2)(ii). In this case, the ALJ appropriately observed this regulation.

(1:08CV2989)

give the opinion." *Wilson*, 378 F.3d at 544 (*discussing* 20 C.F.R. § 404.1527(d)).

The Agency is tasked to ". . . always give good reasons in our notice of determination of decision for the weight we give [the claimant's] treating source's opinion." *Wilson*, 378 F.3d at 544 (*quoting* 20 C.F.R. § 404.1527(d)(2)).[13] Even if the purpose of the reason-giving requirement in 20 C.F.R. § 404.1527(d)(2) applies to the entire regulation, the Agency requires ALJ's to give reasons for only treating sources. *Smith*, 482 F.3d at 876.

The regulations further require ALJs to weigh nontreating medical source opinions under the same factors applicable to treating medical sources, including: (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, consistency of the opinion with the record as a whole and (4) specialization. *See Davenport v. Astrue*, No. 3:06CV402, 2008 WL 641131 at *6 (S.D.Ohio Mar. 4, 2008); *Kester v. Astrue*, No. 3:07cv00423, 2009 WL 275438 at *10 (S.D.Ohio Feb. 3, 2009).[14]

Tasheana explicitly challenges the weight given Dr. El Soud. As if an afterthought, in the

_____

[13] This requirement ensures "the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *See Wilson*, 378 F.3d at 544. In addition, the reason-giving requirement "exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed his disabled and therefore might be especially bewildered when told by an administrative bureaucracy to that he [sic] is not, unless some reason for the agency decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)).

[14] The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. § 404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion..."); *see also* 20 C.F.R. § 404.1527(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. § 404.1527(f)(iii) (same as to medical experts' opinions); SSR 96-6p.

(1:08CV2989)

conclusion of her brief on the merits, Tasheana alludes to Dr. Roizen as another treating

physician.  As explained in greater detail below, the ALJ relied upon the findings of Dr. Roizen

but did not label her a treating physician.

The Court's review of the record does not support Tasheana's concern regarding the

ALJ's treatment of Dr. El Soud or Dr. Roizen.  The ALJ appropriately considered the opinions of

Dr. El Soud under the treating physician rule and articulated his reasons for giving "very minimal

weight" to those opinions.  The ALJ also considered the opinions of Dr. Roizen and explained,

where appropriate, his reliance upon her findings and those of her colleague, Dr. Roberta Bauer,

in concluding that Tasheana does not have "Marked" limitations in the three domains at issue.

### 1. The ALJ Properly Articulated the Weight Given Dr. El Soud

There seems to be no disagreement that Dr. El Soud is a treating physician.  The issue is

whether the ALJ gave Dr. El Soud's opinion requisite weight pursuant to the treating physician

rule and whether the ALJ rejected Dr. El Soud's opinions in favor of a non-examining physician.

### a.        The ALJ Did Not Reject Dr. El Soud's Opinion

Tasheana  incorrectly argues that the ALJ "rejected" the opinion of Dr. El Soud.  ECF

No. 16-1 at 14.  Rather, in accordance with the regulations, the ALJ evaluated the opinion

evidence presented by Dr. El Soud and articulated his reasons for assigning Dr. El Soud's

opinions "very minimal weight." (Tr. 21.)  The ALJ recognized that Dr. El Soud's opinions

should be given some, but not controlling, weight.  *See* SSR 96-2p, 1996 WL 374188, at *4

("[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial

evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not

24

(1:08CV2989)

that the opinion should be rejected.").  In determining the degree of limitations for each of the domains, the ALJ's considered " all symptoms and the extent to which these symptoms can be accepted as consistent with the objective medical evidence and other evidence" and also "the opinion evidence in accordance with 20 CFR 416.927, SSR 96-2p, 96-5p and 06-3p."  (Tr. 20.) The ALJ's references to 20 CFR 416.927 are in accordance with the treating physician rule.

> ### b.      The ALJ Assigned Dr. El Soud's Opinions Proper Weight

Tashaena contends that the opinions of Dr. El Soud should be given great weight because he was her treating physician.  ECF No. 16-1 at 14.  Specifically, Tasheana argued that a treating physician's opinion is entitled to substantially greater weight than that of a physician who has treated Tasheana only once and that contrary testimony of a non-examining physician is not enough justification to reject a treating physician's opinion.  ECF No. 16-1 at 14  (*citing Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987); *Lashley v. Sec. of Health and Hum Serv.*, 708 F.2d 1048 (6th Cir. 1983); *Stamper v. Harris*, 650 F.2d 108 (6th Cir. 1981); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The ALJ's written decision appropriately detailed the deficiencies in Dr. El Soud's opinion and explained why he refused to give it controlling or great weight.  The ALJ found the following:

> I find that Dr. El Soud's opinions are not born out by the objective medical record or the child's academic record and are mostly contradicted by other evidence.
>
> . . .
>
> I give the opinion if Dr. El Soud very minimal weight.  While I acknowledge that he is apparently the treating pediatrician (or at least was at some point) he is not a specialists in any area relevant herein, nor has it been established that he had

25

(1:08CV2989)

familiarity with the record as a whole or with the analysis of evidence relevant to the conclusions he reached.  Moreover, not only are his assessments as to marked limitation each area of functioning far overreaching and unsupported by the evidence, but the assessments are entirely inconsistent with the record as a whole and with the evidence provided buy other specialized treating sources.  For example, those sources indicate that the claimant is generally healthy other than her asthma and that her asthma has not required any intervention on an emergency basis.  Her grades are good and although she had a very brief period of misbehavior in Spring 2007 and one incident in April 2008, in general the claimant gets along well with her peers and was friendly.

(Tr. 19, 21-22.)

The ALJ found that Dr. El Soud's opinions were mostly contradicted and not "born out" by other evidence in the record.  ( Tr. 19.)

Although Dr. El Soud and Tasheana claimed that Dr. El Soud was Tasheana's treating pediatrician for five years, it is unclear when Dr. El Soud last treated Tasheana and how Dr. El Soud came to the conclusion that Tasheana has "Marked Limitation" in all six domains.  The ALJ noted that the last treatment record provided by Dr. El Soud was dated August 3, 2005.  On May 27, 2008 Dr. El Soud completed a Questionnaire Health Care Professionals on Medical and Functional Equivalence at the request of Tasheana's attorney.  Dr. El Soud's questionnaire (Tr. 436-438) contains findings with no explanation.  Dr. El Soud merely checked boxes indicating his agreement with pre-written options.  For open ended questions at the end of the questionnaire, Dr. El Soud answered yes or no, or left the space blank.  (Tr. 436-438.)  For example, Dr. El Soud left blank question 13 which asked "if this is an episodic disorder, how often and for how long does it interfere with Tasheana's functioning."  (Tr. 438.)  Thus, the information available to the ALJ to substantiate Dr. El Soud's opinions largely consisted of blank spaces, conclusory statements and check marks.

(1:08CV2989)

An ALJ is not bound by the conclusory statements of doctors, not even treating physicians.  This is particularly true when the treating physician's opinion is unsupported by sufficient clinical or diagnostic findings and inconsistent with other reliable evidence.  *See King v. Heckler*, 742 F.2d 973 (6th Cir. 1984).  In the instant matter, Dr. El Soud's blank spaces, check marks and conclusory statements provided no meaningful insight into how he determined Tasheana's limitations.  As important, other physicians, including State Agency physicians and other doctors specializing in pediatrics, provided contradictory opinions which was, unlike Dr. El Soud's, supported by other evidence in the record.

The Court finds that the ALJ properly considered the opinion of Dr. El Soud and appropriately articulated his reasons for not giving Dr. El Soud's opinion controlling or even great weight.

### 2.  <u>Dr. Roizen as a Treating Physician</u>

#### a.  <u>Classification</u>

"A physician is a treating source if he[or she] has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant . . . 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)].'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (*citing* 20 C.F.R. § 404.1502).

The ALJ's written decision reflects that he relied upon Dr. Roizen's assessments along

27

(1:08CV2989)

with those of her Cleveland Clinic colleague, Dr. Roberta Bauer.[15]  That the ALJ's written

decision does not explicitly state whether the ALJ considered Dr. Roizen (or her colleague for

that matter) an examining, consulting, or treating physician is not problematic, in this instance,

for at least two reasons.  First, the opinions of Drs. Rozien and Bauer collectively support the

ALJ's finding that Tasheana does not have "Marked Limitation" in any of the three disputed

domains, negating the requirement for the ALJ to detail reasons for not giving that treating

physician's opinion greater weight.  Second, it is not at all clear that Dr. Rozien was indeed a

treating physician.  To the extent she was, the ALJ's failure to explicitly label her so is harmless

error, for the reasons provided below.

      The record reflects that Tasheana was first seen at the Cleveland Clinic when she was six

and one-half years old.  *See* progress notes for October 10, 2006; Tr. 419 - 422.  Dr. Roizen is

shown as the Provider on the progress notes for Tasheana's initial examination and on progress

notes from subsequent examination up to January of 2008.[16]   The Cleveland Clinic progress

notes also show that Tasheana was seen by a Dr. Roberta Bauer, on January 3, 2008, and April

15, 2008.  The length of time and frequency that Dr. Roizen treated Tasheana permitted Dr.

Roizen to develop a treatment relationship, spanning over one year, that could arguably qualify

---

[15]  Tasheana does not mention Dr. Bauer in her brief and has waived the opportunity to do so.  For the sake of clarity, the Court includes Dr. Bauer because the record makes it obvious that both doctors are affiliated with the Cleveland Clinic and that Dr. Rozien saw Tasheana from October 2006 through May 2007 and Dr. Bauer saw her in 2008.  (424-427.)  It is the collection of these two medical opinions that the ALJ references when he refers to "evaluators at . . .  the Cleveland [C]linic."  (Tr. 424-427.)

[16] A Cleveland Clinic nurse, resolved the problem regarding Tasheana's prozac overdosage.

(1:08CV2989)

her as one of Tasheana's treating physicians.  *See* 20 C.F.R. § 404.1502 ("We may consider an

acceptable medical source who has treated or evaluated you only a few times or only after long

intervals (*e.g.*, twice a year) to be your treating source if the nature and frequency of the

treatment or evaluation is typical for your condition(s)."); *see also Pasco v. Comm'r of Soc. Sec.,*

*137 Fed. Appx. 828, 837-38 (6th Cir. 2005)* (analyzing a medical source as a treating source

where the physician completed only a form without any supporting treatment notes or any

indication of how long the physician had been treating the patient).

The ALJ acknowledged Dr. Rozien"s progress notes and the length the of time Tasheana

had been treated by her at the Cleveland Children's Memorial Hospital.  (Tr. 18.)  The ALJ

considered Dr. Roizien's findings made at the initial examination, on October 10, 2006, during

which Tasheana scored on the Slossen test was 6 years and 4 months and was described as quiet

and vigilant.  (Tr. 18, 375-379, 421.)  The ALJ acknowledged Dr. Roizen's finding that Tasheana

has a risk of developmental problems given her family history and diagnosed Tasheana with

probable ADHD, and possible anxiety disorder.  (Tr. 18, 375-379, 421.); 20 C.F.R. §

404.1527(d) and (f).  It was Dr. Rozien who initially prescribed Ritalin for Tasheana.[17]  (Tr. 418.)

The more recent progress reports from the Cleveland Clinic (those for January and April of 2008)

reflect Dr. Bauer, not Dr. Rozien, as the medical provider.  (Tr. 424-427.)  Dr. Bauer's notes

show that although Tasheana has maintained a diagnoses of ADHD, she is no longer

participating in  therapy.  (Tr. 424-427.)  In addition, the notes reflect that Tasheana's grades

---

[17]  In October 2006, Dr. Roizen began  on a low dose of Ritalin 5 mg.  The Ritalin made
Tasheana sleepy, consequently Dr. Roizen prescribed a low dose of Prozac instead.

(1:08CV2989)

were good, with the exception of one bad behavior report.  Tasheana was doing well on her

current regimen and prescriptions.  (Tr. 424-427.)

The ALJ credits the findings of the Cleveland Clinic doctors for his determination in the

domain of Attending and Completing Tasks.  He wrote, "I am persuaded by the reports

evaluators at Berea and the Cleveland [C]linic and find that the claimant does not have a marked

limitation in this domain, but rather is less than markedly limited."  (Tr. 23.)

The ALJ considered the opinions of Dr. Roizen and Dr. Bauer and articulated his

reliance upon that medical evidence.  To the extent it was necessary to label Dr. Roizen a treating

physician, the Court finds the ALJ's failure to do so harmless error.

### b.  Harmless Error Analysis

The Sixth Circuit has found that the harmless-error rule applies in the Social Security

context.  *Masters v. Astrue*, 2008 WL 4082965, at *3 (E.D. Ky. Aug. 29,

2008) (*citing Heston,* 245 F.3d at 535) ("failure to explain weight given to treating physician

is not reversible error where ALJ's opinion is nonetheless supported by substantial evidence

and error was harmless"); *cf. Wilson*, 378 F.3d at 546 ("a procedural error is not made

harmless simply because [the aggrieved party] appears to have had little chance of success on

the merits anyway.").  Courts, nonetheless, apply a harmless error analysis cautiously, taking

care to avoid rewriting an ALJ's decision *post hoc* even when substantial evidence exists to

support the ALJ's decision.

While a "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's

finding where the deficiency [has] no practical effect on the outcome of the case,"

30

(1:08CV2989)

inaccuracies, incomplete analysis and unresolved conflicts of evidence can serve as a basis for

remand.  *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000).  An ALJ can consider all of the

evidence without directly addressing in his written decision every piece of evidence submitted

by a party, but his factual findings as a whole must show that he implicitly resolved such

conflicts.  *See Kornecky v. Comm'r of Soc. Sec.*, 2006 WL 305648, at *10 (6th Cir 2006)

> The Wilson Court instructs that where the ALJ fails to give good reasons on the
> record for according less than controlling weight to treating sources, we reverse and
> remand unless the error is a harmless *de minimis* procedural violation.  *See Wilson*,
> 378 F.3d at 547.  Such harmless error may include the instance where "a treating
> source's opinion is so patently deficient that the Commissioner could not possibly
> credit it," or where the Commissioner "has met the goal of ... the procedural
> safeguard of reasons."  *Wilson*, 378 F.3d at 547.  However, the ALJ's failure to
> follow the Agency's procedural rule does not qualify as harmless error where we
> cannot engage in "meaningful review" of the ALJ's decision.  *Id*. at 544.

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d at 409.

Contrary to Tasheana's vague protests, the ALJ's written decision appears to be in full

agreement with Dr. Roizen findings and, arguably, the ALJ has given Dr. Roizen's opinions

substantial if not controlling weight.  For example, the ALJ gave Dr. Roizen's opinions

controlling weight over all other examining, treating or consulting doctors with regard to the

Attending and Completing Tasks Domain.  (Tr. 21.); 20 C.F.R. 4040.1527(f)(2)(ii) (The

regulations mandate that "unless the treating physician's opinion is given controlling weight, the

administrative law judge must explain in the decision the weight given . . .").

The ALJ's possible failure to label Dr. Roizen's opinion as that of a treating physician is,

at worst, an excusable *de minimis* procedural violation because: (1) the Court *can* perform a

meaningful review of the ALJ's written decision as his reasoning is "sufficiently specific to make

(1:08CV2989)

clear," that the ALJ properly recognized and evaluated Dr. Roizen's treating relationship with

Tasheana,[18] and (2) any deficiency has no practical effect on the outcome of the case.  The ALJ

presented a thorough analysis which clearly reflected that, in determining the degree of

limitations for each of the domains, he considered all symptoms and the extent to which these

symptoms can be accepted as consistent with the objective medical evidence and other evidence

and the opinion evidence in accordance with the regulations.[19]  If Dr. Roizen deserved a title she

did not receive, that defect was cured by the authority the ALJ awarded her findings.

## IV.  <u>Conclusion</u>

The Court finds that substantial evidence exists to support the ALJ's decision that

Tasheana Henderson did not suffer "Marked Limitation" in at least two domains or "Extreme

Limitation" in one domain of functioning and, therefore, is not disabled and eligible for Social

Security benefits.

For the reasons stated above, the Court AFFIRMS the final decision of the Commissioner

denying benefits to Plaintiff Ella Henderson on behalf of her great-granddaughter, Tasheana

Henderson.

IT IS SO ORDERED.


 March 17, 2010                              /s/ Benita Y. Pearson
Date                                      United States Magistrate Judge


---

[18]  *See* <u>Soc. Sec. Rul 96-2p, 1996 WL 374188</u> *5 (SSA Jul 1996)

[19]*See*  <u>20 CFR 416.927,</u> SSR 96-2p, 96-5p and 06-3p.

(1:08CV2989)